[No. 7251.    Decided August 14, 1908.]

FENTON H. GOSS, *Appellant*, v. NORTHERN PACIFIC
HOSPITAL ASSOCIATION OF TACOMA, *Respondent*.[1]

CONTRACTS—CONSTRUCTION—SUBSEQUENTLY REDUCING TO WRITING
—EFFECT. The fact that a contract for the construction of a build-
ing was not reduced to writing and signed until after the commence-
ment of the work does not affect the writing as a controlling state-
ment of the terms and conditions agreed upon, and the writing meas-
ures the rights of the parties.

SAME—BUILDING CONTRACTS—STIPULATIONS — REMEDY PROVIDED—
EXCLUSIVENESS. Where a building contract provided for its comple-
tion by the principal contractor within a certain date, and that, for
any delay or default of any other contractor, additional time should
be given for the completion of the building, the provision constitutes
the principal contractor's sole remedy; and he cannot recover dam-
ages from the owner resulting by reason of the delay or default of
another contractor having the plumbing work.

Appeal by plaintiff from a judgment of the superior court
for Pierce county, Clifford, J., entered July 10, 1907, upon
the verdict of a jury rendered in favor of the plaintiff, after
the withdrawal of certain issues at the instance of the defend-
ant, in an action on contract. Affirmed.

*Herbert S. Griggs* and *Walter M. Harvey*, for appellant.
*B. S. Grosscup*, for respondent.

FULLERTON, J.—In June, 1904, the respondent asked for
bids for the construction of a hospital and staff cottage
building, on certain lots which it owned in Tacoma, Washing-
ton, according to plans and specifications which had been
theretofore prepared by its architects. The appellant sub-
mitted a bid for the work, which proved to be the lowest, and
was requested to visit the architects with a view to entering
into a contract. The architects had their offices at St. Paul,
Minnesota, and it was at that place the consultation was

[1]Reported in 96 Pac. 1078.

held. At that time certain changes in the specifications with regard to the material to be used were made, and it was also agreed that the furnishing and installation of the plumbing and the heating plant should be let as a separate contract. The remaining work was thereupon let to the appellant.

The appellant returned home and entered on the performance of the contract about the first of July, 1904. The contract was reduced to writing and signed by the parties a month or six weeks later. As written the contract provided for the completion of the building by March 1, 1905, and contained the following clause:

"Should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the owner or the architects, or of any other contractor employed by the owner upon the work, or by any damage which may happen by fire, lightning, earthquake or cyclone, or by the abandonment of the work by the employees through no default of the contractor, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid; but no such allowance shall be made unless a claim therefor is presented in writing to the architects, within twenty-four hours of the occurrence of such delay. The duration of such extension shall be certified to by the architects, but appeal from their decision may be made to arbitration as provided in Article III of this contract."

The contract for the plumbing and the installation of the heating plant was let to the Dwyer Steam Heating Company of St. Paul, by the respondent, as an independent contract. The terms of this contract are not shown in the record, and it does not appear whether there was any breach of the contract on the part of the company or not, but it did not put in the plumbing nor install the heating plant at the time the building was ready to receive them, thereby delaying the appellant in the performance of his part of the contract, to his damage, as he claims, in a large sum of money. The appellant also was required by the architect in charge to do some

work not called for in his contract, and certain deductions were made for materials which the architect claimed to be defective and not in accordance with the contract.

This action was begun by the appellant to recover for these several items. At the trial it was stipulated that the jury might return a given sum for extra work, and the court submitted to them the question whether the deductions were properly made. The question of damages, however, it withdrew from the consideration of the jury, holding that damages for delay caused by an independent contractor were not recoverable against the owner. This appeal questions the correctness of the latter ruling. The appellant seems to think that the question is affected somewhat by the fact that the contract was not reduced to writing and signed by the parties until after the appellant had entered upon the performance of the work. But manifestly the rights of the parties are not affected by this circumstance. Whether the contract was at first oral and was afterwards reduced to writing by the parties by mutual consent for their mutual protection, or whether it was understood at the time the contract was entered into that it should be afterwards reduced to writing, the writing equally measures the rights of the parties. Its efficacy as a contract and as the controlling statement of the terms and conditions of the agreement between the parties is not affected by the fact that it was not written until after these terms and conditions were orally agreed upon, or by the fact that the appellant began work before it was written.

The trial judge ruled as he did on the principal question because of the clause in the contract above quoted. He held that since the parties had contracted that for any delay caused the appellant by the "act, neglect, delay or default . . . of any other contractor," additional time should be given him for the completion of the work, that this marked the extent of appellant's remedy for such act or default.

It seems to us that this conclusion is sound. For conditions which arise in the execution of a contract and for which the

contract itself makes no provision, the courts are at liberty
to apply the ordinary legal remedies when these conditions
become a subject of controversy between the contractors; but
where the probability of the happening of the condition has
been foreseen and a remedy is provided for its happening,
the presumption is that the parties intended the prescribed
remedy as the sole remedy for the condition, and this pre-
sumption is controlling where there is nothing in the contract
itself or in the conditions surrounding its execution that neces-
sitates a different conclusion.    So in this case, since the par-
ties foresaw that the appellant might be delayed in the execu-
tion of his part of the work by the failure of the party having
the contract for the plumbing and heating plant to perform
its work on time, and provided in the contract that the rem-
edy therefor should be an extension of time on his part to
perform the work, the presumption arises that this was intend-
ed to measure the rights of the contractor thereunder.    Is
there anything in the contract itself, or in the circumstances
surrounding it, that precludes the idea that it was so intended?
We see nothing that works against the conclusiveness of the
presumption.    The contract was an ordinary building con-
tract, in which the parties undertook to put in writing all
of their rights and liabilities thereunder.    It provided for
every condition that could arise in its execution, leaving noth-
ing to surmise or inference, and we think it must be held to
contain the entire agreement.

This question was passed upon in the case *Haydnville Min.
& Mfg. Co. v. Art Institute*, 39 Fed. 484, where the rule was
announced in accordance with the conclusion we have reached,
and in the cases of *Nelson v. Pickwick Associated Co.*, 30 Ill.
App. 333, and in *Genovese v. Third Ave. R. Co.*, 13 App.
Div. 412, 43 N. Y. Supp. 8, where a contrary conclusion was
announced.    For the reason stated, however, we feel con-
strained to follow the doctrine of the Federal case.

The judgment is affirmed.

HADLEY, C. J., CROW, and ROOT, JJ., concur.